**FRAZIER et v WESTERVILLE (Village)**

Ohio Appeals, 2nd Dist, Franklin Co

No 3288.  Decided March 25, 1941

O. H. Mosier, Columbus, and Carl H. Valentine, Columbus, for plaintiffs-appellees.

W. P. Cockrell, Columbus, and Horace W. Troop, Columbus, for defendant-appellant.

## OPINION

**By HORNBECK, J.**

This is an appeal on questions of law from a money judgment of the Common Pleas Court for plaintiffs and against the defendant.  There are eleven errors assigned which we will discuss in detail later.

Plaintiffs' petition was filed July 10, 1937, and prayed damages on account of the loss of crops for the year 1937 in the sum of $45.00 and other damage in the sum of $4,955.00, $5000.00 in all, for damages by reason of overflow of water onto the 63 acre farm of plaintiffs in Blendon Township, Franklin County, Ohio.

The petition alleges that Alum Creek, a natural watercourse, drains the farm of the plaintiffs and that for many years prior to the date set forth in the petition the flow of the surface water from different parts of plaintiffs' farm

into Alum Creek had been accelerated by means of tile ditches or farm drains, so constructed and arranged as to afford adequate drainage of said lands.

It is averred that defendant owned two tracts of land, one of four acres and the other of eight acres. The four acre piece was located at the southeast corner of plaintiffs' farm and to the north of a highway known as Park Road; that Alum Creek flows through this tract of land, dividing it into approximately equal parts. The other tract of land of eight acres lies to the south of the four acre piece but all to the east of Alum Creek.

It is further alleged that during the years 1935, 1936 and 1937 the defendant for the improvement of its waterworks caused a concrete permanent dam to be erected across Alum Creek about 100 feet south of Park Road and connected to the defendant's eight acre tract and in conjunction with the construction of the dam also built certain dikes on both sides of Alum Creek above the dam but below plaintiffs' premises, on its own premises and also on the premises on the opposite side of Alum Creek and also constructed dikes on the east side of Alum Creek opposite plaintiffs' premises; that defendant at about the same time that it constructed the dam and dikes, excavated and removed a large amount of earth from the west bank of Alum Creek on plaintiffs' premises and dumped or deposited large quantities of earth at or about the middle of said stream immediately north of Park Road and built a stone wall around the same.

It is further averred that as a result of aforesaid construction and excavating, the dumping of dirt in the stream and construction of a stone wall around the same, the flow of water in said stream has been seriously impeded and its depth has been greatly increased; that the increase in depth of water in normal times comes to about 18 inches at the western boundary of plaintiffs' farm and gradually increases throughout the entire distance of the boundary of plaintiffs' land to several feet at the southern extremity; that as a result of the foregoing, approximately two acres of plaintiffs' land not covered by water prior to the construction of the aforesaid improvements is now constantly flooded and the flow of water through the farm drains is impeded and held back and during times of unusual rainfall or flood, the natural flow of the water is held back so as to overflow an area of approximately 30 acres of plaintiffs' premises not overflown by high water prior to the construction of the improvement. The special damage to crops is then set forth.

The first defense of the second amended answer, after admitting its corporate capacity, ownership of the two tracts of land as set out in the petition, construction of a dam across Alum Creek connected to its eight acre tract, that the dam is of concrete and permanent nature; generally denies all other allegations of the petition.

The second defense is that, if plaintiffs have suffered any damage it was due solely and entirely to an act of God, result of excess and extraordinary rainfall entirely beyond any act or control of the defendant.

The third defense avers that defendant constructed a dam across Alum Creek approximately 1350 feet south of the bridge on Main Street, extended, and connected to defendant's eight acre tract and also caused to be constructed certain dikes and other improvements also of permanent character; that all of said improvements were finished and in operation, having been filled with water establishing levels therein, on or before April 2, 1935, and that such existing conditions have not been altered or changed since the aforesaid date; that plaintiffs, if at all the owners of the premises described in the petition, did not own them at the time the improvements were made and completed and that if plaintiffs are the owners and holders of the ttile to said land described in said petition they hold the land as successors in title.

Plaintiffs demurred to the second and third defenses of the answer which was

overruled and thereafter filed a reply, denying each and every allegation in the second amended answer.

Upon issues joined the cause was tried to a jury. At the conclusion of plaintiffs' evidence defendant moved for directed verdict and for judgment, which motion was overruled. Defendant then offered its evidence and renewed the motion for directed verdict at the conclusion of all the evidence which was likewise overruled and the cause submitted to a jury which returned a verdict for the plaintiffs in the sum of $750.00, and, after a motion for new trial was filed, heard and overruled. judgment was entered on the verdict.

Although there are eleven errors assigned, they may be considerably reduced in number. No. 1 relates to error in the admission of testimony by the plaintiffs, objected to by the defendant and exceptions taken at the time. Nos. 2 and 3 are directed to the action of the court in overruling the motion for directed verdict at the conclusion of plaintiffs' case and at the end of the testimony by both parties. Nos. 4, 5, 6, 7, 8 and 9 are directed to claimed errors in the general charge of the court as given in stating to the jury that there was no high water or flood until the 1937 flood; that there had been no evidence or testimony offered tending to prove that the improvement had benefited the premises; that there had been no evidence offered to support the second defense, i. e., that the damages occurred by reason of an act of God; the court erred by frequent repetition of a principle of law which it is claimed was involved in the case but was not the controling principle of law. No. 10, error in permitting plaintiffs to amend their petition and No. 11, the verdict is not sustained by and is against the manifest weight of the evidence and contrary to law.

## No. 1.—"ADMISSION OF TESTIMONY BY THE PLAINTIFFS OVER THE OBJECTION OF DEFENDANT."

As we view this evidence the court sustained the objection of the defendant to the testimony referred to at page 36 of the record and adopted the theory of the defendant that there was but one recovery and that for the diminished value of the land, due to the obstruction and that as to the loss of standing crops no specific damages could be awarded. The court, however, did permit testimony to go in as to the value of fodder, destroyed by high water, which had been severed from the land and charged the jury that the loss of this fodder could be compensated in damages.

We have been able to find but one case directly bearing upon the subject and it supports the action of the trial judge in this case, Beck v Kulesza, (Del.) 156 Atl. 347, where the court charged that the measure of damages generally was "the difference between the fair value of the land before the injury complained of and its fair value after such injury * * * and adding thereto the value of cut logs and cord wood, as shown by the evidence to have been lost by the plaintiff", etc. This was not a case of damages growing out of a permanent improvement but the measure of damages was the same as in the instant case and we see no good reason why the full charge as given would not be applicable here.

## "OVERRULING OF MOTIONS FOR DIRECTED VERDICT."

Assigned errors Nos. 2 and 3 may be considered together because they raise the same question. If the plaintiffs had the right to go to the jury on their own evidence there was nothing introduced defensively which would take away that right when all the evidence was offered.

As so many times is the case, counsel are not in any disagreement as to the law controlling, but diverge sharply as to its application to the facts. Two authorities have been cited, discussed and accepted by counsel and all the judges who have considered one of the major questions in this case, namely,

the time when the cause of action accrued to the owners of the lands described in the petition. These authorities are Farnham, "Water and Water Courses", Vol. 2, §592, page 1882:

"The general principle by which the question of the right of a grantee to maintain a suit is solved is found in the character of the obstruction. If it is of a permanent nature and one which the one constructing it may obtain the right to maintain, then the cause of action is complete when the structure is, and the grantee can not maintain an action. On the other hand, if the obstruction is a nuisance, which the one constructing it has obtained no right to maintain, then the grantee has a right of action for the injury inflicted on him. If the injury was permanent at the time of the completion of the structure, the owner at that time has a cause of action which is not assignable and does not pass to the grantee."

And, Richmond v Gentry, 136 Ky., 319,

"Where the obstruction causing land to be overflowed is of a permanent character so that the damages are in gross and there can be but one recovery, such damages are recoverable by the then owners of the land and not by a successor in title.

Obviously if the structure is permanent and the damages recoverable in one gross sum covering all time, that should end the matter. To allow additional recoveries of the same nature would be to mulct the defendant a number of times for the same wrong and to compel it to make compensation repeatedly for one taking of the property. It is equally clear that the person from whom the property was taken, its owner at the time of the permanent injury, is the one to be compensated. If he sells the property subsequently, he sells it in its impaired state; the purchaser buys it under then existing conditions which detract from its value, and fixes the consideration according-

ly. If he were allowed then to recover its diminished value, he would get something he had not bought. It is upon these considerations that is rested the rules of compensation above outlined."

The 63 acres described in the petition and owned by the plaintiffs at the time of the institution of their action came to them in two parcels, the first a seven acre tract by deed of date, July 12, 1935, the second tract, about 56 acres, known as the Carpenter land, by deed March 19, 1936.

The defendant by its third defense of the answer pleads that it caused the dam across Alum Creek and certain dikes and other improvements to be constructed and that all of said improvements were finished and in operation on or before April 2, 1935, and that such existing conditions have not been altered or changed since the aforesaid date and defendant insists that its proof supports this defense of its answer. From these facts it is urged that the application of the principle of law announced in Farnham, Water and Water Courses and Richmond v Gentry, supra, requires the conclusion that damage, if any, accrued to the lands described in the petition on April 2, 1935, and that the right to exercise this claim for damages inured to the owner of the premises and did not and could not pass to the plaintiffs as of the date that they took title.

Plaintiffs meet this contention with the assertion that their cause of action did not arise until the injury resulting in their damages was apparent and that it did not occur and, therefore, could not have been known prior to 1937. We are inclined to support this latter view of the law.

In 67 C. J.-761 it is said,

"Where the injury to plaintiff's property is of a permanent nature, plaintiff is entitled to the difference between the market value of his property **before the injury and the market value of it after the injury.**"

Citing cases from 21 states and Canada.

"Or immediately before and immediately after the construction of the structure causing the permanent injury."

Citing cases in none of which was the identical question presented here considered

"Or just before and just after the effect of the structure becomes known, and the rule is the same, even though the permanent injury is wrought by an occasional flowage." (Emphasis ours).

See also 67 C. J. 729, 15 Am. Jur. 517.

But a few months elapsed after the completion of the dam and the acquisition of the seven acre tract and less than a year elapsed between its completion and the acquisition of the fifty-six acres by the plaintiffs. It is well within the probabilities that no unusual flowage of water over the lands of plaintiffs occurred at any time prior to their purchase of both tracts of lands. From their evidence in this case it is conclusive that this is the fact. They claim no damage before the spring and summer of 1937 and no testimony is forthcoming in their presentation of the case of any damaging deposits of water on the lands prior to 1937.

There is another reason why, on this record, the defendant can not prevail on the question now under consideration, even though the cause of action against the village arose when the improvement was completed.

It will be noted that the plaintiffs and the defendant both plead that the improvements constructed by the village over and along Alum Creek not only included the dam but the dikes and excavations necessary thereto constructed in conjunction with the dam. The testimony of the plaintiffs and all but one of their witnesses who speak on the subject is to the effect that construction of the improvements continued after the plaintiffs acquired title to their lands.

The defendant offers no testimony as to the date of completion on any part of the improvement save only the dam which John H. Wenger testified was in operation so far as an impounding device on April 1, 1935, but neither he nor Carl Walker, the engineer in charge of the construction, say anything about the date when the other phases of the improvement were completed and Mr. Walker testifies that the construction which began in 1934, "included the dam and dikes which you have described on both sides of the creek". So that, the defendant fails either purposely or inadvertently to meet the express testimony of the plaintiffs that the construction under consideration was not completed on April 1, 1935, but that it continued until after they had acquired their lands. In view of this situation, even though the law requires the narrow interpretation given it by the defendant, the record does not produce the facts requiring the application of the law.

The court committed no error in overruling the motions of defendant for directed verdict.

No. 4.—"CHARGE OF THE COURT THAT THERE WAS NO HIGH WATER UNTIL THE 1937 FLOOD."

The foregoing situation disposes of the claimed error of the court in saying to the jury that there was no high water or flood until the 1937 flood. If it be granted that this was an incorrect statement of the fact, it could not prejudicially affect the rights of the defendant because it did not appear that the plaintiffs' cause of action accrued in 1935 and they claimed no damages prior to 1937.

No. 5.—"ERROR IN THE CHARGE THAT THERE HAD BEEN NO EVIDENCE OFFERED TENDING TO PROVE THAT THE IMPROVEMENT HAD BENEFITED THE PREMISES."

The court was in error in making the statement to the jury that there was no

evidence offered tending to prove that the improvement had benefited the premises. B. B. Wilson stated that the public improvement had raised the value of the Carpenter tract $10.00 per acre, which the court accepted over the objection of plaintiffs. This testimony was introduced in most general terms and it does not appear whether it was based upon the effect of the improvement on the flow of water on to, over and across the lands or by reason of proximity of plaintiff's lands to a project which had the effect of beautifying the land whereon the dam was located and therefore advantaging it as well as nearby property generally. The court may have had this in mind when he made the observation heretofore alluded to.

In McGee, et v Fox et (N. C.) 12 S. E. 369, a suit for damages for ponding backwater on plaintiff's land, the court charged, that defendant could not set off any benefit to the land but the jury should ascertain from all the evidence if the plaintiff had sustained any damage, and, if so, how much. This charge was approved and is the basis of the statement in 67 C. J. 731, that defendant can not offset incidental benefits to plaintiff's property against the injury shown to have been inflicted upon it by him.

"In an action against a railway company for causing the overflow of land by the construction of an embankment across a branch, the company can not set off the enhanced value given to the land by the construction of the road, where such increase in value is given in common to other lands in the vicinity by the presence of the road." Farnham Water and Water Courses, p. 1831. Citing St. Louis I. N. & S. R. Co. v Norris, 35 Ark. 622.

If it was necessary to construct the obstruction which the plaintiffs claim resulted in damage to their realty, it would be in probability a taking of their property for which compensation must be made, and it would not be appropriate to set off against their damages any enhancement which might accrue in common to property holders along the line of the improvement.

No. 6.—"ERROR IN CHARGING THAT THERE HAD BEEN NO EVIDENCE OFFERED TO SUPPORT THE SECOND DEFENSE, i. e., AN ACT OF GOD."

We are satisfied from an examination of the record that there was no evidence from which the jury could have properly determined that any of the damages of which the plaintiffs claim were caused by an act of God, as the term is understood in the law.

The high water and flood conditions which the testimony disclosed were not so unusual or unexpected as that it could be said that they could not reasonably have been foreseen nor as to which the usual course of nature afforded no premonition. In 67 C. J. 709, it is said,

"The test whether or not a flood is such as to be deemed an act of God apparently is whether after considering the laws of hydraulics, the natural formation of the country, the character of the stream, its habits and history, to the extent of learning its probable behavior under conditions which experience has shown are likely to recur, a prudent man would have anticipated it. The fact that similar floods had occurred has been held to tend strongly to show that they were not so extraordinary and unusual that they might not reasonably have been expected to occur."

The burden of establishing this defense was upon the defendants. The only approach that was made to the subject was the testimony of John H. Wenger who gave certain high water readings of the depth of the water at the dam, but these readings did not purport to make comparison with extraordinary floods such as that of 1913 as would have required the court to submit the question to the jury.

Nos. 7, 8 and 9.—"ERROR IN THE PRINCIPLE OF LAW WHICH THE COURT HELD TO BE CONTROLLING."

We have sufficiently discussed the subject matter of these assignments heretofore and find that the court committed no error with respect to any one of them.

No. 10.—"ERROR IN PERMITTING PLAINTIFFS TO AMEND PETITION."

This amendment did not change the total amount prayed for in the petition, but reduced the specific claim for damages to growing crops to the one claim of damage for fodder and permitted the difference resulting by this amendment to be added to the sum total claimed by way of general damage. This was not prejudicial to the defendant.

No. 11.—"VERDICT CONTRARY TO LAW AND THE EVIDENCE."

There was nothing more than a factual dispute upon the record. The plaintiffs' testimony made a case for substantial damages. The testimony of George H. Taylor, which gave evidence of being truthful and fair, is illuminating and convincing that the lands of plaintiffs were overflown with water in 1936. 7 and 9, to an extent not theretofore occasioned on said lands and it could reasonably have been determined that this condition was proximately caused by the improvements admitted to have been made by the defendant.

The jury had the testimony of the defendant's expert witnesses as to value in conjunction with the facts as developed by the evidence on behalf of the parties and in the light of their view of the premises. If the plaintiffs were entitled to any damages the amount of the verdict is certainly modest, when it is considered that there can be but one recovery for past, pres-

ent and future injury resulting to their lands.

The judgment will be affirmed.

GEIGER, PJ. and BARNES, J., concur.