HATFIELD, Appellant,

v.

WRAY, Dir., Appellee.

[Cite as *Hatfield v. Wray* (2000), 140 Ohio App.3d 623.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 00AP–52.

Decided Dec. 19, 2000.

624

*Law Office of Mowery & Youell, Samuel N. Lillard* and *Spencer M. Youell,* for appellant.

*Betty D. Montgomery,* Attorney General, *Frederick C. Schoch* and *Gregory S. Severance,* Assistant Attorneys General, for appellee.

---

DESHLER, Judge.

Appellant, William D. Hatfield, appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of appellee, Jerry Wray, Director of the Ohio Department of Transportation, on appellant's action to institute appropriation proceedings.

On October 21, 1998, appellant filed a complaint in mandamus to compel appellee to institute appropriation of property proceedings pursuant to R.C. Chapter 163. Appellant is the owner of real property located on the eastern side of State Route 13, in Perry County, Ohio. Appellant and his three sisters received title to the property by deed granted to them on February 11, 1992. During the early 1970s, the Ohio Department of Transportation ("ODOT") engaged in the reconstruction of State Route 13; appellant's father and mother owned the property at that time. Appellant's complaint alleged that, in 1975, appellant's

family began to experience problems of settling and moisture with a house and restaurant located on appellant's property.

The complaint alleged that, in 1998, as a result of testing conducted by Geotechnical Consultants, Inc., it was discovered that ODOT, in reconstructing State Route 13, "caused and/or permitted fill to be laid at depths of 6 to 9 feet, two and three times greater than planned." It was further alleged that, as a direct and proximate result of ODOT's conduct, groundwater built up underneath appellant's property, causing water damage to the house and restaurant as well as the property, resulting in a devaluation of the property.

On July 27, 1999, appellee filed a motion to dismiss or, in the alternative, a motion for summary judgment. On August 27, 1999, appellant filed a memorandum contra. By decision filed December 16, 1999, the trial court granted appellee's motion for summary judgment, finding that appellant lacked standing to bring the action and that, even assuming that appellant had standing, the action was barred by the twenty-one-year limitations period under R.C. 2305.04.

On appeal, appellant sets forth the following four assignments of error for review:

"1. The trial court erred in granting the appellee's motion for summary judgment on the basis that the appellant's complaint was untimely as the appellee's adverse possession of the appellant's property was not open nor notorious until the underground dam was discovered in 1997.

"2. The trial court erred in granting the appellee's motion for summary judgment on the basis that the appellant's complaint was untimely because the appellant was entitled to the application of the doctrine of equitable estoppel.

"3. The trial court erred in granting the appellee's motion for summary judgment on the basis that the appellant's complaint was untimely because the appellant was entitled to the application of the discovery rule.

"4. The trial court erred in granting the appellee's motion for summary judgment as the appellant has standing to bring this action."

We will first address appellant's fourth assignment of error, in which appellant contends that the trial court erred in granting appellee's motion for summary judgment on the basis that appellant lacked standing to bring this action.

In general, a motion for summary judgment will be granted only where there is no genuine issue of any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). Further, summary judgment shall not be granted unless it appears from the evidence that "reason-

able minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made." *Id.*

■ In his complaint in mandamus, appellant asserted that appellee's "conduct in building an impervious barrier, restricting the flow [of] groundwater beneath State Route 13, thereby causing the Relator's property to flood, is a taking pro tanto of Relator's property in violation of Ohio Revised Code Section 163.02(B), and Section 19, Article I of the Ohio Constitution." Section 19, Article I of the Ohio Constitution states in part that "[p]rivate property shall ever be held inviolate, but subservient to the public welfare. When taken * * * for the purpose of making or repairing roads * * * a compensation shall be made to the owner * * *." Under Ohio law, "a property owner's remedy for an alleged 'taking' of private property by a public authority is to bring a mandamus action to compel the authority to institute appropriation proceedings." *Consolidated Rail Corp. v. Gahanna* (May 16, 1996), Franklin App. No. 95APE12–1578, unreported, 1996 WL 257457.

In the present case, the trial court noted in its decision that appellant's parents first began to notice an unnatural accumulation of water on the property in 1975, approximately three years after the project was completed in 1972. The facts further indicated that appellant's parents arranged a meeting with ODOT's head engineer in 1975, at which time appellant's father informed ODOT of his belief that the highway reconstruction project in the early 1970s resulted in flooding to his property. The trial court, in finding that appellant lacked standing to pursue this action, held in part:

"* * * It is undisputed that by 1975 Hatfield's parents suspected that ODOT's reconstruction of State Route 13 had caused their property to unnaturally retain water. Thus, the injury to the property both occurred and was discoverable before relator took title to the property. In *Frazier v. Village of Westerville* (1941), 36 N.E.2d 812, the Franklin County Court of Appeals held in part that a nuisance action accrues upon discovery of the injury to the property and may not be assigned to a later grantee. Under these facts, Hatfield lacks standing to bring this action."

As noted above, the trial court relied upon this court's decision in *Frazier v. Westerville* (1941), 34 Ohio Law Abs. 227, 36 N.E.2d 812. In that case, this court considered the issue of whether one who acquires land after completion of a permanent obstruction may maintain an action for damages from water flow over his land where no unusual flowage occurred prior to the purchase. In *Frazier, supra,* at 229–230, 36 N.E.2d at 816, this court quoted the following two authorities in addressing that issue:

"\* \* \* Two authorities have been cited, discussed and accepted by counsel and all the judges who have considered one of the major questions in this case, namely, the time when the cause of action accrued to the owners of the lands described in the petition. These authorities are Farnham, 'Water and Water Courses,' Vol. 2, § 592, page 1882:

" 'The general principle by which the question of the right of a grantee to maintain a suit is solved is found in the character of the obstruction. If it is of a permanent nature and one which the one constructing it may obtain the right to maintain, then the cause of action is complete when the structure is, and the grantee can not maintain an action. On the other hand, if the obstruction is a nuisance, which the one constructing it has obtained no right to maintain, then the grantee has a right of action for the injury inflicted on him. If the injury was permanent at the time of the completion of the structure, the owner at that time has a cause of action which is not assignable and does not pass to the grantee.'

"And, *Richmond v. Gentry,* 136 Ky., 319 [124 S.W. 337],

" 'Where the obstruction causing land to be overflowed is permanent in character so that the damages are in gross and there can be but one recovery, such damages are recoverable by the then owners of the land and not by a successor in title. \* \* \* It is equally clear that the person from whom the property was taken, its owner at the time of the permanent injury, is the one to be compensated. If he sells the property subsequently, he sells it in its impaired state \* \* \*[.]' "

Appellant contends that the holding in *Frazier* is inapplicable to the instant case because the present action involves a taking based upon appellee's creation of a hidden underground "dam" of groundwater, causing a nuisance and trespass which is continuing in nature. In support, appellant relies upon *Valley Ry. Co. v. Franz* (1885), 43 Ohio St. 623, 627, 4 N.E. 88, 91, in which the court held in part:

"And when the owner of land rightly and lawfully does an act entirely on his own land, and by means of such act puts in action, or directs a force against, or upon, or that affects another's land, without such other's consent or permission, such owner and actor is liable to such other for the damages thereby so caused the latter, and at once a cause of action accrues for such damages; and such force, if so continued, is continued by the act of such owner and actor, and it may be regarded as a continuing trespass or nuisance; and each additional damage thereby caused is caused by him and is an additional cause of action; and until such continued trespass or nuisance by adverse use ripens into and becomes a presumptive right and estate in the former, the latter may bring his action."

We note that neither *Frazier* nor *Valley Railway* involved an action alleging a governmental appropriation or "taking" of private property. In *Steinle*

*v. Cincinnati* (1944), 142 Ohio St. 550, 555, 27 O.O. 488, 490, 53 N.E.2d 800, 803, the Ohio Supreme Court stated that "[t]he general rule is that the right to damages for the taking of land or for injury to land is in the one who owns the land when the taking or injury occurs, and does not ordinarily pass to a subsequent grantee." One commentator has noted that "[i]t is well settled that when there is a taking of property by eminent domain in compliance with law, it is the owner of the property *at the time of the taking* who is entitled to compensation." Nichols on Eminent Domain (Rev.3 Ed.), Section 5.02[5][d], 5–38. Thus, "if the parcel of land from which the taking is made changes hands after the taking has occurred but before the compensation has been paid, the right to receive the compensation does not run with the land." *Id.*

In *Brooks Invest. Co. v. Bloomington* (1975), 305 Minn. 305, 315, 232 N.W.2d 911, 918, the Minnesota Supreme Court noted the rationale behind the rule:

"When the government interferes with a person's right to possession and enjoyment of his property to such an extent so as to create a 'taking' in the constitutional sense, a right to compensation vests in the person owning the property at the time of such interference. This right has the status of property, is personal to the owner, and does not run with the land if he should subsequently transfer it without an assignment of such right. The theory is that where the government interferes with a person's property to such a substantial extent, the owner has lost a part of his interest in the real property. Substituted for the property loss is the right to compensation. * * *"

A number of jurisdictions have adopted the view that, in appropriation or taking cases, the owner at the time of the taking is the proper party to bring proceedings and that the right to compensation generally does not run with the land. See *Riddock v. Helena* (1984), 212 Mont. 390, 393–395, 687 P.2d 1386, 1388 (owner could not maintain action for inverse condemnation against city for construction of water pipe line against land then owned by plaintiff's predecessor in interest); *Berta v. State Hwy. Comm.* (1978), 36 N.C.App. 749, 755, 245 S.E.2d 409, 412 (" 'Damages for the taking of land or for the injury to land not taken belong to the one who owns the land at the time of the taking or injury, and they do not pass to a subsequent grantee of the land, except by a provision to that effect in the deed or by separate assignment.' "), quoting 29A Corpus Juris Secundum Eminent Domain, Section 202; *Brooks Investment Co., supra* (when government creates a "taking" in the constitutional sense, a right to compensation vests in the person owning property at the time of such taking and the right is personal to the owner and does not run with the land if he or she should subsequently transfer it without an assignment of such right); *Canney v. St. Petersburg* (Fla.App.1985), 466 So.2d 1193, 1195 ("Damages to compensate for the taking of land * * * belong to the one who owns the land at the time of the taking

or injury"); *Crede v. Oak Grove* (Mo.App.1998), 979 S.W.2d 529, 534 (owners lacked standing to bring inverse condemnation claim for taking that occurred when property was owned by their predecessors; "any damage suffered as a result of the taking in this case would have been suffered by the owner at the time the damage became ascertainable, and the damage claim based on inverse condemnation would not pass to subsequent grantees of the land").

In *Hoover v. Pierce Cty.* (1995), 79 Wash.App. 427, 903 P.2d 464, the landowners acquired property in 1988 with knowledge that a 1972 road construction project had allegedly caused flooding problems on the property. The landowners subsequently brought an inverse condemnation action against the county, and the trial court granted a directed verdict against the county. On appeal, the court in *Hoover, supra,* 79 Wash.App. at 436, 903 P.2d at 470, reversed the trial court's decision, holding that the landowners could not maintain their action, and stating in part:

"* * * [T]he County has not undertaken any new action since installing the roadway culvert in 1972; thus, no new taking cause of action has arisen, and the Hoovers, as subsequent purchasers, may not recover for a taking that occurred prior to their ownership."

In the present case, appellant became a grantee of the property in 1992, long after the highway project had been completed, and the record is undisputed that the water problems alleged to have been caused by the project were manifest to the original owner as early as 1975. The trial court held that appellant lacked standing to bring this action because "the injury to the property both occurred and was discoverable before relator took title to the property." Although the trial court relied upon authority (*Frazier, supra*) that did not involve a governmental taking claim, we conclude, based upon case law applicable to actions alleging a governmental taking or appropriation of private property, that the trial court properly concluded that appellant lacked standing to bring this action.

Accordingly, appellant's fourth assignment of error is overruled.

■ The trial court also held in its decision that, even if appellant had standing, his action would be barred under the limitations period set forth under R.C. 2305.04. This court's disposition of the standing issue essentially renders moot appellant's remaining assignments of error, including appellant's challenge to the court's application of R.C. 2305.04. However, assuming that we were required to reach those issues, we would find no error by the trial court.

■ R.C. 2305.04 provides in part that "[a]n action to recover the title to or possession of real property shall be brought within twenty-one years after the cause of action accrued * * *." This court has previously applied the twenty-one-year statute of limitations in a case in which a plaintiff brought an action against

a city to compel the commencement of appropriation proceedings. *Consolidated Rail Corp., supra.*

Appellant notes that, in order for appellee to acquire title to property by adverse possession, appellee's taking must be open, notorious, continuous, and adverse use for a period of twenty-one years. See *Grace v. Koch* (1998), 81 Ohio St.3d 577, 579, 692 N.E.2d 1009, 1011. Appellant asserts that, because ODOT's creation of an "underground dam" was buried and hidden by sight, it was neither open nor notorious.

The trial court, in finding appellant's action to be untimely under R.C. 2305.04, held in part:

"* * * [A]n action accrues upon the date the injury to the property is either actually discovered or should have been discovered by a reasonably prudent owner. The accrual date is not tolled due to the inability of a claimant to discover the full extent or precise cause of the injury. * * * It is undisputed that by 1975, Hatfield's parents discovered what they believed to be unnatural flooding. It is further admitted that they believed that ODOT's reconstruction of State Route 13 was the cause of the flooding. It was at this point that a reasonably prudent owner should have taken steps to investigate further whether ODOT caused the flooding. Hatfield has not alleged that his parents were somehow unable to further investigate whether ODOT was liable for the flooding. Based upon the facts admitted, the Court finds that 1975 is the latest possible accrual date for this action. Thus, this action is barred by R.C. § 2305.04 as it was not filed within 21–years after discovery of the injury to the property."

As noted, appellant's basic contention is that the "underground dam" allegedly created by ODOT was buried from sight and therefore ODOT's use was neither open nor notorious until discovered by appellant's expert in 1997. We disagree.

In *Riddock, supra,* the appellant contended that, because an underground pipe line was not visible to him when he purchased certain property, nor was it visible throughout the prescriptive period, the use was not open and notorious. The court in *Riddock, supra,* 212 Mont. at 396–397, 687 P.2d at 1389–1390, rejected this reasoning, holding in part:

"A similar argument was addressed by this court in *O'Connor* [*v. Brodie* (1969), 153 Mont. 129, 454 P.2d 920]:

" "* * * defendants [landowners] argue that an underground water line does not have the element of open and visible use; that being underground there is no interference or conflict in use of the surface land. * * *

" '*In answer to this contention we might ask in what further adverse manner could plaintiffs occupy defendants' land with an underground water line?* * * *'

"The city openly and visibly constructed the water supply line across the Ranch Company's land outside the easement granted to the City. The intended location of the pipeline was staked out for all to see. The District Court specifically found that there was nothing more the City could have done under the circumstances to put the landowner on notice of its use. Certainly these circumstances were sufficient to put the landowner on inquiry. * * * [W]e find the City's use was sufficiently open and notorious to support the District Court's finding of a prescriptive easement."

In the instant case, the record indicates that the original owner observed ODOT's construction of the highway project in 1971 and 1972. As noted by the trial court, the owner contacted ODOT as early as 1975 and indicated a belief at that time that ODOT was responsible for the flooding of the property. Similar to *Riddock*, although the alleged source of the governmental taking was "underground," the owner of the property was on notice of the highway project, and we conclude that the trial court did not err in holding that the latest accrual date for the action was 1975, when the owner first believed ODOT's reconstruction project caused the flooding.

 We also find no merit to appellant's contention that the trial court erred in its application of the "discovery rule" to the facts of this case. This court has previously noted that, in general, "a cause of action accrues at the time the wrongful act is committed." *Wright v. Lima Correctional Facility* (Sept. 21, 2000), Franklin App. No. 00AP–332, unreported, 2000 WL 1358126, citing *Harris v. Liston* (1999), 86 Ohio St.3d 203, 205, 714 N.E.2d 377, 378–379. However, the Ohio Supreme Court, in certain situations in which a strict application of the rule can lead to an unjust result, has applied the discovery rule. *Wright, supra.* In *Wright*, this court noted that the Ohio Supreme Court has applied the discovery rule to the following causes of action: "medical malpractice, legal malpractice, wrongful adoption, fraud, conversion, credentialing of a physician, exposure to asbestos, exposure to toxic chlorine gas, sexual abuse of children and wrongful death." *Id.*

Although the Ohio Supreme Court has adopted the discovery rule in various circumstances, appellant has not cited any cases in which the rule has been applied in the context of an appropriation action under R.C. Chapter 163. However, even assuming its applicability to the instant case, we find no error by the trial court in its application of the rule. In its decision, the trial court relied upon the Supreme Court's ruling in *Harris, supra,* in which the court held in part that "a negligence action against a developer-vendor of real property for damage

to the property accrues and the * * * statute of limitations * * * commences to run when it is first discovered, or through the exercise of reasonable diligence it should have been discovered, that there is damage to the property." *Id.* at 207, 714 N.E.2d at 380.

In applying the rationale of *Harris* to the facts of the instant case, the court concluded that, by 1975, when the original owner was aware of the flooding and believed that ODOT's reconstruction of highway project caused the flooding, "a reasonably prudent owner should have taken steps to investigate further whether ODOT caused the flooding." We find no error in the trial court's determination. See, also, *Beavercreek Local Schools v. Basic, Inc.* (1991), 71 Ohio App.3d 669, 689, 595 N.E.2d 360, 373 ("It is unnecessary that the full extent of damages be ascertainable and it is immaterial that additional damages may occur subsequently when determining the accrual date of a cause of action for statute of limitations purposes. * * * [A]n accrual of a cause of action is not delayed until the full extent of the resulting damage is known.").

 Appellant also contends that the trial court should have applied the doctrine of equitable estoppel to toll the running of the statute of limitations. We note that the trial court did not address this issue, and neither the complaint nor other parts of the record make a reference to equitable estoppel. "It is well settled that issues not raised in the trial court will not be considered on appeal." *Williams v. Jerry L. Kaltenbach Ent., Inc.* (1981), 2 Ohio App.3d 113, 115, 2 OBR 126, 128, 440 N.E.2d 1219, 1221.

Accordingly, we find appellant's first, second, and third assignments of error to be without merit.

Based upon the foregoing, appellant's first, second, third, and fourth assignments of error are overruled and the judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

TYACK and LAZARUS, JJ., concur.